UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

FLOYD MAY, et al.,
    Plaintiff,

vs.          03-1295

STEPHEN MOTE, et al.
    Defendants.

## ORDER

This cause is before the court for consideration the defendants motion for summary judgement. [d/e 79]

### BACKGROUND

Three pro se plaintiffs, Floyd May, Andre Mason and Demond Reid, filed this lawsuit pursuant to 42 U.S.C. §1983 alleging that their constitutional rights were violated at the Pontiac Correctional Center. The plaintiffs have named nine defendants including Warden Stephen Mote; Superintendents Troy Quinley, Malcolm Davidson, and Francis Melvin; Correctional Officers Michael Burger and Edward Gerber; Warden Greg Cox; and Lieutenants Lance Evans and Scott Punke. After merit review, the court found that the plaintiff's had adequately alleged that:

    1) The lack of adequate clothing provided for cold and rain violated the plaintiffs' Eighth Amendment rights,
    2) The lack of adequate clothing violated the plaintiffs' rights under the equal protection clause, and
    3) The implementation of the excessive noise policy violated the plaintiffs' rights under the First and Eighth Amendments.

The claims are against the defendants in their individual capacities only.

### FACTS

The plaintiffs are all Illinois Department of Corrections inmates who were incarcerated in the segregation unit at Pontiac Correctional Center during the events outlined in their complaint.

The plaintiffs allege that the clothing provided to them in segregation is inadequate for outdoor weather. The parties agree that inmates are provided underclothes, short sleeve jump suits, a medium weight coat, socks and shoes. The plaintiffs state that the shoes they are issued are deck shoes that are not appropriate for winter months. In addition, segregation inmates may purchase thermal underwear in the commissary but no extra clothing is available for indigent

1

inmates.

The plaintiffs claim that inmates who are not in the segregation unit are also issued boots, heavier coats and headgear. In addition, inmates who are required to work outside for 30 minutes or longer are issued boots, gloves, thermal underwear and a snowsuit during the winter months.

Segregation inmates may go to the segregation pods in the yard for 2 ½ hours recreation time twice each week  In order to be allowed recreation time, a segregation inmate must be dressed in their underwear with all garments they intend to wear displayed on the cell bars so guards can search the clothing. The only other time segregation inmates go outside is when they must go to a separate building such as the Health Care Unit. The plaintiffs state that anytime a segregation inmate leaves his cell, he is also secured in restraints.

Public Service Administrator Troy Quinley states that segregation inmates are limited to recreation time in individual segregation pods for security concerns. In addition, Quinley states that each segregation inmate's clothing is searched prior to escorting the inmate to the recreation pod for security reasons.

Quinley states that segregation inmates are not allowed to wear multiple layers of the same clothing items outside their cells and this restriction includes yard time. Quinley says in the past, some inmates have tried to conceal weapons, drugs, money or other dangerous items in their layered clothing. Quinley states inmates have also attempted to create defensive gear by placing cardboard or magazines in between layers of clothing.

Attending this recreation period is not mandatory, so a segregation  inmate may chose to stay in his cell. Quinley states that offenders can still get adequate exercise in their cells by doing sit-ups, push-ups, stretching, calisthenics or running in place. The plaintiff's state that it is difficult to exercise safely in their cells, and the excessive noise policy prevents vigorous exercise.

Plaintiff May states that on January 22, 2003, he collapsed during yard recreation time due to the cold temperatures.  The parties disagree about the extent of the plaintiff's injuries. The plaintiff says he suffered for approximately two weeks and was told by an unnamed doctor that the condition was likely the result of "a minor case of hypothermia and frostbite." ( Plain. Response, Grievance, p. 2)   In his deposition, the plaintiff stated that he suffered from the "pain of coldness" for approximately one or two hours after the event. (Def. Memo, May Depo, p. 9)

Pontiac Correctional Center has an excessive noise policy that prohibits excessively loud noise such as yelling or banging on cell doors. Defendant Quinley says the purpose of the noise policy is to enable security staff to maintain order and ensure the safety and security of all inmates and staff in a living unit. Quinley states that each segregation unit houses between 150 and 300 inmates. Therefore, Quinley states that a noise policy is needed to keep the noise from becoming disruptive and irritating to others in the unit. Quinley further points out that excessive

noise prevents security staff from communicating with each other or inmates and may interfere with staff members ability to monitor the activities and well-being of staff and offenders.

Defendant Quinley states that each inmate is informed of the excessive noise policy in the Orientation Manuel that inmate's receive when they arrive at Pontiac Correctional Center. Updated manuals are periodically issued to the inmates. Inmates are informed that yelling and banging on cell doors can result in the receipt of a disciplinary report and progressive discipline. Continued non-compliance can result in placement behind a solid door with limited personal property.

Plaintiff May says the noise policy was not in the orientation manual when he arrived at Pontiac Correctional Center and he claims the rule was not added to the manual until after the plaintiffs filed their lawsuit.

The plaintiffs have alleged additional facts and the defendants have not filed a reply. The plaintiff state that death row inmates have a higher security classification than segregation inmates, but they are allowed to have boots, gloves and headgear in the winter months.

The plaintiffs further state that the noise policy does not require staff to give inmates a warning before writing a disciplinary ticket for a noise violation. The plaintiffs say they often receive tickets for talking to another inmate.

The plaintiffs make several points concerning the amount of yard time they are allowed and they appear to claim that the yard time limitation violates the Eighth Amendment. However, this was not one of the claims clearly identified in the complaint nor the initial merit review order nor did the plaintiffs ask to add this claim at any time. Therefore, it is not before the court. In addition, the plaintiffs continue to argue that the noise policy itself is unconstitutionally vague. The court has previously addressed this claim and it is also not before the court. *See* June 21, 2006 Court Order.

## LEGAL STANDARD

The entry of summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the nonmoving party. *Id.*

A party moving for summary judgment initially has the burden of showing the absence of any genuine dispute of material fact based on the evidence. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 153 (1970); *Schroeder v. Barth, Inc.,* 969 F.2d 421, 423 (7th Cir. 1992). A nonmoving party cannot rest on its pleadings, but must demonstrate that there is admissible evidence that will support its position. *Tolle v. Carroll Touch, Inc.,* 23 F.3d 174, 178 (7th Cir.

3

1994).  The evidence and all reasonable inferences drawn therefrom are viewed in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255.  Nonetheless, "(s)ummary judgement is not a discretionary remedy.  If the plaintiff lacks enough evidence, summary judgement must be granted." *Jones v. Johnson*, 26 F.3d 727, 728 (7th Cir. 1994).

ANALYSIS

A.  CLOTHING-EQUAL PROTECTION

The defendants argue that the plaintiffs have failed to show that the clothing issued to segregation inmates violates their equal protection rights.  The Fourteenth Amendment's equal protection clause directs that "all persons similarly situated should be treated alike." *Cleburne v Cleburne Living Center,* 473 U.S. 432, 439 (1985).  The plaintiffs argue they are not trying to claim they are similarly situated to inmates who work outside.  However, the plaintiffs maintain they are similarly situated to inmates in the general population.

The plaintiffs' argument fails.  Courts have held that "inmates confined in a disciplinary segregation unit are not similarly situated with general population inmates." *Boyd v. Anderson,* 265 F.Supp.2d 952, 966 (N.D. Ind. 2003).  "By the very nature of the disciplinary segregation unit, inmates who are housed there are taken out of the general population and subjected to different, more restrictive conditions."  *Walker v. Department of Corrections,* 2002 WL 32341702 (W.D. Wis. June 19, 2002).  In addition, although not addressed in their argument, the court also finds that the plaintiffs are not similarly situated with death row inmates. *Martin v Scott*, 156 F.3d 578, 580 (5th Cir. 1998) (inmates with different housing classifications are not similarly situated.)  The defendants motion for summary judgement on the plaintiffs' equal protection claim is granted.

B. CLOTHING- EIGHTH AMENDMENT

The defendants argue that the plaintiffs have failed to demonstrate that the clothing issued to segregation inmates during the winter months violated the Eighth Amendment.  Prison conditions may be harsh and uncomfortable without violating the Eighth Amendment's prohibition against cruel and unusual punishment.  *Farmer v Brennan,* 511 U.S. 825, 833-834 (1994).  However, prisoners are entitled to "the minimal civilized measure of life's necessities," including adequate shelter and protection from extreme cold. *Id.*  The circumstance, nature and duration of the deprivation of these necessities must be considered in determining whether a constitutional violation has occurred. *See Veal v Lane,*1993 WL 503462(7th Cir. Dec. 7, 1993) "Prison officials violate the constitution if they provide clothing that is "patently insufficient to protect [them] from the cold in the winter months." *Balla v. Idaho St. Brd. of Corrections,* 595 F. Supp 1558, 1575 (D. Idaho 1984).

The defendants state that the plaintiffs only claim is the clothing they are issued is inadequate for outdoor weather.   The defendants maintain that segregation inmates are only exposed to outdoor conditions for 2 ½ hours twice a week for recreation, "plus the short amount

4

of time that it would take to walk from one building to another on occasion." (Def. Memo, p. 12) The defendants further state the plaintiffs are not required to go outside for recreation time and have the option on extremely cold days to exercise in their cells.

The plaintiffs claim they are forced to chose between exercise time in the yard and going outside with clothing that is in no way suited for the weather conditions. The plaintiffs claim their cells are too small for meaningful exercise. However, each plaintiff admits that he has exercised in his cell to some extent. (Reid Depo, p. 11), (Mason Depo, p. 18),(May Depo., p. 19).

The plaintiffs also claim if they decide to give up yard time, they are still forced to go outdoors when they have to walk to other buildings within the correctional center. The plaintiffs say the distance between some buildings is three to four football fields. They are unable to move quickly because they are shackled and they are forced to wear deck shoes even if there is snow, sleet or icy water on the pathways. The plaintiffs maintain a trip under these conditions can take as long as 20 to 25 minutes one way. (Plain Memo, p. 6) In their depositions, the plaintiffs state that they do not need to leave their cells to eat. However, they would have to go outside in order to go to the healthcare unit, or participate in a deposition or attend an administrative hearing. (May Depo, p. 10).

Based on the evidence before this court, the court does not believe that a reasonable jury could find that the plaintiffs are forced to go outside for exercise time in the extreme cold. The plaintiffs are not required to go outside and may chose to exercise indoors. It is a matter of their own choosing although they personally may not like the choice. Neither does the court believe that a reasonable jury could find that on the limited occasions when a segregation inmate is required to go to another building within the institution it can take up to twenty to twenty five minutes. The inmate has to travel, at the outside, four hundred yards if the plaintiffs' assertion as to distance is accepted as correct. Shackled or not, it would not take that long for a person to walk four hundred yards. Moreover, the plaintiffs agree that an inmate in segregation only goes to another building within the institution on limited and special occasions. That would occur over a year's time and not necessarily in extremely cold weather. Those isolated occurrences would not rise to the level of a constitutional violation.

C. NOISE POLICY- FIRST AND EIGHTH AMENDMENT

The defendants argue that the plaintiffs have failed to demonstrate that the noise policy at Pontiac Correctional Center violates the First Amendment. The Supreme Court has repeatedly recognized that the "fact of confinement and the needs of the penal institution to impose limitations on constitutional rights, including those derived from the First Amendment, which are implicit in incarceration." *Jones v. North Carolina Prisoners Labor Union, Inc.,* 433 U.S. 119, 125 (1977). In addition, the "inmate's 'status as a prisoner' and the operational realities of a prison dictate restrictions on the associational rights among inmates." *Id.* at 125-126.

Therefore, in order to establish that their First Amendment rights were violated, the plaintiffs must show that the restriction on their rights to communicate were not "reasonably

5

related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89(1987). Such interests can include inmate security and the proper allocation of limited prison resources. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 352-353 (1987)

The defendants state the purpose of the noise policy is to enable security staff to maintain order and ensure the safety and security of all inmates and staff in a living unit. The defendants point out that a noise policy is necessary with 150 to 300 inmates living in one unit.

The plaintiffs state the noise policy was initially implemented to stop inmates from using noise to mask violence between inmates. The plaintiffs say it was not originally put in the segregation unit manual because inmates are housed in individual cells. The plaintiffs state correctional officers do not give any warnings before telling an inmate that his conversation with another violates the noise policy. The plaintiffs claim correctional officers are using the Insolence rule to "infract prisoners for talking, praying and even calling out for help during times of medical emergencies." (Plain.. Memo, p. 17). The plaintiffs claim the defendants have not used the least restrictive means to impose the Insolence Rule and instead have "basically foreclosed all reasonable opportunity to verbally communicate and express ideas and opinions." (Plain. Memo, p. 20)

The court finds that the noise policy at Pontiac Correctional Center is reasonably related to the legitimate penological interest of security. While the plaintiffs argue that the policy is unfairly enforced and prevents inmates from praying or calling out for medical help, they have presented no evidence to support these claims other than general allegations.

The court also finds that the plaintiffs have failed to demonstrate that the noise policy violated their Eighth Amendment rights. Plaintiffs claiming that the conditions of their confinement violated the constitution must show first that the alleged deprivation was "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). Only conditions involving the denial of the "minimal civilized measure of life's necessities" rise to the level of a constitutional violation. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). In addition, the plaintiffs must show that the defendants acted with deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "[A] finding of deliberate indifference requires evidence that the official was aware of the risk and consciously disregarded it nonetheless." *Mathis v. Fairman*, 120 F.3d 88, 91 (7th Cir. 1997)(citing *Farmer* at 840-42). The plaintiffs have failed to present any evidence that the implementation of the noise policy rose to the level of an Eighth Amendment violation. The motion for summary judgement on the plaintiff's claims concerning the noise policy is granted.

**IT IS THEREFORE ORDERED that:**

1)  The defendants' motion for summary judgment (docket # 79) is allowed.  The Clerk of the court is directed to enter judgment in favor of the defendants and against the plaintiffs pursuant to Fed. R. Civ. P. 56.  All other pending matters are rendered moot by this order.  The case is terminated.  The parties are to bear their own costs.

2) If the plaintiffs wish to appeal this dismissal, they  may file a notice of appeal with this court within 30 days of the entry of judgment.  Fed. R. App. P. 4(a)(4).  A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiffs plan to present on appeal.  *See* Fed. R. App. P. 24(a)(1)(C).  If the plaintiffs do choose to appeal, they will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal.  Furthermore, if the appeal is found to be non-meritorious, the plaintiffs may also accumulate a strike under 28 U.S.C. 1915(g).

3) The agency having custody of the Plaintiffs are directed to remit the docketing fee for this case of $150.00 from each of the plaintiff's prison trust fund accounts if such funds are available.  If a plaintiffs does not have $150.00 in his trust fund account, the agency must send 20 percent of the current balance, or the average balance during the past six months, whichever amount is higher; thereafter, the agency shall begin forwarding monthly payments from the plaintiff's trust fund account to the clerk of court each time the plaintiff's account exceeds $10.00 until the statutory fee of $150.00 is paid in its entirety.  The filing fee collected shall not exceed the statutory filing fee of $150.00.

4) Each plaintiff is ordered to notify the clerk of the court of a change of address and phone number within seven days of such change.   Release from incarceration does not relieve the plaintiff of his obligation to pay the filing fee in full.

5)The clerk is directed to mail a copy of this order to each plaintiff's place of confinement, to the attention of the Trust Fund Office.

Entered this 23rd day of January, 2007

s\Harold A. Baker
_____
HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE